[S. F. No. 13469. In Bank.—September 23, 1931.]

MEYER MEIZLISCH, Respondent, v. SAN FRANCISCO WOOL SORTING & SCOURING COMPANY et al., Defendants; E. P. McLENNAN WOOL COMPANY, Intervener and Appellant.

Geo. Clark Sargent and Aaron M. Sargent for Appellant.

Inman & West for Respondent.

RICHARDS, J.—This appeal is from an order of the Superior Court in and for the City and County of San Francisco denying the motion of the intervener and appellant herein to discharge an attachment which had been issued and levied upon certain moneys on deposit in the Crocker First National Bank of San Francisco in the name of said intervener, but which it was claimed by the plaintiff herein in reality belonged to the defendant in the action. Upon the hearing on said motion the trial court received evidence in the form of the affidavit of one F. P. McLennan, who had been successively the president and manager of both of these companies, and also in the form of the sworn testimony of said McLennan, in amplification of the matters treated in his said affidavit. These statements of McLennan

by affidavit and as a witness constituted the only evidence presented to the trial court upon the hearing upon said motion, and basing its ruling thereon the court denied the intervener's motion, and from its order to that effect this appeal has been taken.

The only question presented upon this appeal is as to whether or not the evidence thus presented to the trial court was sufficient to justify its order denying said motion. This evidence showed substantially the following to be the facts: On September 20, 1927, the plaintiff commenced this action against the San Francisco Wool Sorting & Scouring Company to recover a balance alleged to be due him for services as a wool buyer rendered to said company. No attachment was issued at the time of the commencement of said action for the reason, apparently, that the defendant therein did not appear to have any tangible assets. At the time of the commencement of the action F. P. McLennan was and for many years prior thereto had been the president and manager of said defendant, which was a family corporation, all of the stock whereof had been owned by members of the McLennan family. On April 26, 1928, however, the F. P. McLennan Wool Company was incorporated, the incorporators thereof being F. P. McLennan, George C. Daley and Marjorie F. Adams, the first two of these subscribing one share of stock each, and Majorie F. Adams, who was the daughter of McLennan, subscribing to the remainder of the total capitalization of $25,000. F. P. McLennan became president and manager of the new company, which opened offices in the same building, although not in the same room, as the old company, but which used the same equipment and warehouse facilities and had access to the files and list of customers of the former concern, the office personnel of the new concern being the same as that of the old. The new company when thus organized proceeded to do business with the same wool growers with whom the former concern had done business, and the eastern connections of the Wool Company were substantially the same as those with whom the Sorting Company had been doing business for a number of years. While the two concerns did not occupy the same office space they were in the same building and the sign of the new company contained

in smaller letters the name of the former concern. Shortly after its incorporation the F. P. McLennan Wool Company had a transaction with a customer who apparently had been one of the customers of the former concern, as a result of which it received and deposited ·in the bank the moneys which were made the subject of the attachment process in this action, issued shortly after said transaction, and levied upon the moneys thus deposited in said bank. The foregoing facts appeared from the affidavit and testimony of the witness McLennan. It is true that McLennan also undertook to depose and testify that the new concern was not the *alter ego* of the old, but was a different and independent corporation, the chief owner of the stock of which was his daughter, whose money invested therein was her own, and who had not been a member or stockholder of the former concern. It is asserted, however, by the respondent herein, and was not seriously denied, that the moneys which the daughter invested in the new concern had been derived by her from her mother, the deceased wife of F. P. McLennan, who had in her lifetime been the owner of practically all of the stock of the old concern. The trial court, while accepting in the main the testimony of F. P. McLennan, was not bound to accept that portion of his evidence wherein he undertook to testify that these two companies were independent concerns and were not in fact the mere successive instrumentalities through which the McLennan family were continuing to do the same business under the name of the new concern which had been conducted under the old, between the same customers, with the same equipment and agencies, and under the same management by McLennan as the head of the McLennan family. We are satisfied that from the evidence thus educed the trial court was justified in finding that the two concerns were practically the same, the latter being merely a continuation of the activities of the former, under the same control and management, but merely under a different name. This being so, it would seem to follow that the trial court was justified in its refusal to dismiss the attachment, upon the authority of 6 Cal. Jur., pp. 591, 599, 600, *Llewellyn Iron Works* v. *Abbott Kinney Co.*, 172 Cal. 210 [155 Pac. 986], *Stanford Hotel Co.* v. *Schwind Co.*, 180

Cal. 348 [181 Pac. 780], and *Strahm* v. *Fraser*, 32 Cal. App. 448 [163 Pac. 680], all of which are cited in 6 Cal. Jur.

The order is affirmed.

Shenk, J., Seawell, J., Curtis, J., Preston, J., Langdon, J., and Waste, C. J., concurred.